Ricardo O. SHORT, Appellant,

v.

UNITED STATES, Appellee,

Jerome L. McCLINTON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 95–CF–353, 95–CF–412.

District of Columbia Court of Appeals.

Argued April 18, 1996.
Decided May 23, 1996.

Camille M. Weithers, New York City, for appellant Short.

Rozan E. Cater, Washington, DC, for appellant McClinton.

Chun T. Wright, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Mark J. Carroll, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN and FARRELL, Associate Judges, and BELSON, Senior Judge.

FARRELL, Associate Judge:

A offers B a forged Metro flashpass for ten dollars, seventeen dollars less than its face value. B, knowing the flashpass is a fake,

accepts the offer. Has A committed the crime of uttering (D.C.Code § 22–3841 (1989))? Appellants say no because A did not represent the flashpass to be genuine— he did not intend to defraud B. The trial judge, assuming the jury could find the facts essentially as described, nonetheless rejected appellants' conclusion. In accordance with the statutory language, he concluded that as long as the flashpass objectively "purport[ed] to be genuine" and appellants (a) knew it to be falsely made and (b) intended to defraud "another," here the Washington Metropolitan Area Transit Authority (WMATA), the crime was made out. He instructed the jury accordingly. We agree with this analysis of the statute, which differs partially from the elements of the offense as set forth in the standard Redbook instruction. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.43 B. (4th ed. 1993). We also reject appellant McClinton's argument, made for the first time on appeal, that the instruction as given constructively amended the indictment.

### I.

D.C. Metropolitan Transit Police Officers Spencer and Pecoraro were working undercover on a Metro bus when they saw Theodore Harris show the bus driver what appeared to be a counterfeit flashpass.[1] The pass was not the correct color for that period, and was visibly different from the genuine instrument in other respects as well. Escorted off the bus, Harris told the officers he had bought the fake pass earlier that day for ten dollars from a man at the corner of Eighth and H Streets, N.E., describing the man's appearance. The officers went to that location and encountered appellant Short. He mumbled the word "flashpass," and when Officer Spencer asked, "Do you have a flashpass," Short replied "Yes" and asked him if he wanted to buy it. Spencer said yes.

Telling Spencer to wait, Short walked twenty feet to a bus shelter and talked with a man who fit the description of the seller given by Harris. This man, appellant McClinton, handed Short a document. Short returned to Spencer, put the document in his hand, and said "Give me $10 for it." The document was a fraudulent flashpass with a printed value of $27 and the same serial number as the one on the pass displayed by Harris. Spencer asked Short if he had change for a twenty, a request Short conveyed to McClinton. As the latter pulled change out of his pocket, the officers arrested both appellants. McClinton had on his person a counterfeit flashpass, several expired flashpasses, a piece of paper with a note to contact named persons about "D.C. flashpasses," and a credit card and social security card not in the name of either appellant.

### II.

Forgery, which includes uttering, "is a statutory and not a common law crime in the District of Columbia." *Martin v. United States,* 435 A.2d 395, 397 (D.C.1981). As relevant here, the statute provides:

(a) For the purposes of this subchapter, the term:

(1) "Forged written instrument" means any written instrument *that purports to be genuine* but which is not because it:

(A) Has been falsely made, altered, signed, or endorsed;

(B) Contains a false addition or insertion; or

(C) Is a combination of parts of 2 or more genuine written instruments.

(2) "Utter" means to issue, authenticate, transfer, publish, sell, deliver, transmit, present, display, use, or certify.

   \*    \*    \*    \*    \*    \*.

(b) A person commits the offense of forgery if that person makes, draws, or utters a forged written instrument with intent to defraud or injure another. [Emphasis added.]

The trial judge accordingly instructed the jury that in order to find appellants guilty it had to find:

1) that the Metro flashpass was falsely made or altered, and that the defendant knew of its falsity;

---

1. A Metro flashpass allows a rider to prepay the bus fare for a two week period.

2) that the defendant "transferred or presented or displayed that flashpass to someone and that the flashpass purported to be genuine"; and

3) that the defendant acted with "the specific purpose to defraud another[,] and here the other is alleged to be [M]etro."

■ Appellants argue that this instruction was deficient because it did not require the jury to find that the defendant displayed the flashpass to someone "representing that it was true and genuine." As the trial judge recognized, however, the statute has no such requirement. Before enactment of the current statute in 1982, the uttering statute prohibited "attempts to pass, utter, or publish *as true and genuine*, any paper ... falsely made or altered" with intent to defraud or injure. D.C.Code § 22–1401 (1981) (emphasis added). The Redbook interpreted this to mean an actual representation of genuineness.[2] The present statute, by contrast, embodies the representational element in the definition of the forged instrument itself as one "that purports to be genuine." A person therefore utters so long as he or she displays (etc.) an instrument that is "reasonably ad[a]pted to deceive a person of ordinary intelligence,"[3] knowing it to be forged and intending thereby to defraud or injure another. No additional words or action constituting a representation are necessary.

■ Requiring a representation of genuineness beyond that conveyed by the written instrument would be inconsistent with the additional statutory element of an intent to defraud "another," without specification. Appellants would require identity between the person to whom the document is presented and the intended victim of the fraud; the instrument cannot be passed to B with intent to defraud C. Nothing in the statute or legislative history supports this limitation. "Ut-

ter[ing]" under the statute was "meant to be broadly construed." EXTENSION OF COMMENTS, *supra* note 3. Appellants intended to defraud WMATA by selling forged flashpasses to street buyers who they naturally expected (like Mr. Harris) would attempt to use them to avoid fare payment. Although the falsity of the documents almost certainly would be known to buyers (paying $10 on the street for a $27 pass), the statute by its terms reaches such collusive efforts to cheat Metro of its lawful revenue. The trial judge's instructions correctly stated the law applicable to appellants' conduct. The standard Redbook instruction, which is "neither the law nor necessarily a correct statement thereof," *Edelen v. United States*, 560 A.2d 527, 529 n. 9 (D.C.1989), should be changed accordingly.

■ Appellant McClinton further contends that by not requiring an actual representation of genuineness the judge's instructions amended the indictment, which alleged that appellants presented a flashpass to WMATA (*i.e.*, to undercover Metro transit officers[4]) "as true and genuine." Interpreted most favorably to appellant, his argument is that the grand jury may never have been called upon to consider the revised element of whether the instrument "purported to be genuine"—requiring an objective showing of genuineness rather than a (subjective) representation of genuineness. Appellant, however, did not object in the trial court on the ground that the indictment was being constructively amended, and so the trial judge was not alerted to the possibility that deviating from the Redbook elements would alter the charge brought in the indictment. Under these circumstances we apply the plain error standard of review, *see Johnson v. United States*, 616 A.2d 1216, 1232 n. 25 (D.C.1992), which requires at the threshold that the error complained of be " 'clear' or

---

**2.** Accordingly, one element of the offense as set forth in the standard instruction was:

2. That the defendant passed or attempted to pass the writing to someone representing it to be true and genuine....

**3.** EXTENSION OF COMMENTS ON BILL No. 4–133: THE DISTRICT OF COLUMBIA THEFT AND WHITE COLLAR CRIMES ACT OF 1982, submitted by Councilmember David A. Clarke, at 62 (July 20, 1982).

**4.** The indictment does not specify that the defendants presented the pass to WMATA transit police as distinct from say, a WMATA bus driver (presumably the more customary form of uttering), but on the evidence presented it is clear that the grand jury could only have intended to charge the former.

... 'obvious.'" *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). Here it is not obvious that the words "presented ... as true and genuine" referred (in the grand jury's mind) only to appellants' fraudulent intent in presenting the document, not at all to the document itself as capable of being taken for genuine. The indictment linked those words to "a falsely made and altered ... flash pass," and a copy of the flashpass was attached to the indictment. In its entirety, therefore, the indictment reasonably charged that the flashpass, though made so as to deceive a person of ordinary intelligence as to its genuineness, was falsely made and altered.

Even where a claim of constructive amendment has been preserved, "[a] conviction will be reversed only if the evidence introduced at trial and the judge's instructions to the jury 'raise the "substantial likelihood" that appellant may have been convicted of a crime different from that charged by the grand jury.'" *Johnson,* 616 A.2d at 1232 (citation omitted). We perceive no such likelihood in this case.[5]

*Affirmed.*

---

5. We reject, finally, appellant McClinton's argument that the evidence was insufficient to support his conviction.